IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

COLLINGWOOD USA, INC., et al.,

     Plaintiffs,

v.                                   Case No. 3:20-cv-189-S-BT

AHMAD ATWAN, et al.,

     Defendants.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Collingwood USA, Inc. and Collingwood Brookshire USA, Inc.'s "Opposed Motion for Remand," (ECF No. 10), requesting the Court remand this case to the 116th District Court of Dallas County, Texas, because it lacks subject-matter jurisdiction. For the reasons stated, the Court should GRANT Plaintiffs' motion and remand this case to state court.

## Background

In 2015, Enrique Razon, Jr., one of Plaintiff Collingwood USA, Inc. and Collingwood Brookshire USA, Inc.'s (collectively, "Plaintiffs") directors, met Ahmad Atwan (Atwan), "a Morgan Stanley executive," who represented that he "could bring large, profitable oil and gas deals to companies that Razon owned or had an interest in." Mot. 7. Atwan purportedly held himself out as an oil-and-gas industry expert, "capable of providing expert due diligence and opinions regarding oil and gas transactions he brought to Razon." *Id.* Thus, Razon and Atwan entered

into an agreement, "An Agreement between Source Rock Energy, LLC and Mr. Enrique K. Razon" or the "Broker and Due Diligence Agreement," whereby Atwan would recommend deals to Razon on behalf of Plaintiffs in exchange for a monthly payment and a deal fee, based on the size of the acquisition. *Id.* 7-8. Under that agreement, "Atwan was responsible for deal sourcing, deal valuation, due diligence (including technical, commercial, and management due diligence), deal coordination, deal staffing and 'working with Source Rock's proprietary network of industry experts to evaluate and execute deals'"—Atwan represented that Source Rock's proprietary network consisted of industry experts used by Morgan Stanley. *Id.* However, the Broker and Due Diligence Agreement does not reference Atwan's employer, Morgan Stanley & Co., LLC (Morgan Stanley), and Plaintiffs "[have] since come to learn that there is no legal entity known as Source Rock Energy, LLC." First Am. Pet., Def.'s App. 24 (ECF No. 1-3). Nonetheless, as a result of this agreement, Plaintiffs contend they "placed [their] trust in Atwan and entered into numerous transactions believing that [he] was acting in [their] best interest and solely on [their] behalf," paying "Atwan millions for services rendered in conjunction with the Broker and Due Diligence Agreement." Mot. 8.

Atwan also "enlisted Pathhead [Capital, Inc. (Pathhead)] to help him carry out his duties." *Id.* Atwan recommended Pathhead to Plaintiffs as an additional advisor, and Plaintiffs "accepted Atwan's recommendation" such that "Pathhead became an advisor to [Plaintiffs] performing the same or similar functions as Atwan." *Id.* Plaintiffs allege Atwan shared the fees he received from Plaintiffs with

Pathhead. *Id.* Pursuant to the Broker and Due Diligence Agreement, on Atwan and Pathhead's recommendation, Plaintiffs entered into separate transactions with sellers Dome Holdings, LLC (Dome), BBH Development, LLC (BBH), and Hay Mineral Resources, LLC (HMR). *Id.* 9; *see also* First Am. Pet., Def.'s App. 27-28, 32 (ECF No. 1-3). But "each of these investments have [sic] proven to be investments that Plaintiffs should not have invested in, at least for the value paid, if there had been any due diligence performed by Atwan and Pathhead." Mot. 9. In other words, Plaintiffs "learned that the value paid on these transactions far exceeded fair market value of these assets at the time of transaction based upon the advice and encouragement of Atwan and/or Pathhead." First Am. Pet., Def.'s App. 26 (ECF No. 1-3). Plaintiffs also allege Atwan "was . . . being paid by one or more of the[se] sellers," and that Pathhead received its fees "directly from the sellers as well or shared in the seller's [sic] payments to Atwan as compensation for its services." Mot. 9. Atwan, Pathhead, HMR, Dome, and BBH knew Plaintiffs were unaware HMR, Dome, and BBH paid Atwan and Pathhead. *Id.* Essentially, Plaintiffs contend HMR, Dome, and BBH participated in a "scheme whereby . . . [they] had secret paid agents 'advising' [Plaintiffs] to participate in or overpay for bad investments." *Id.* Thus, Plaintiffs allege Atwan and Pathhead breached the Broker and Due Diligence Agreement by failing to perform the required due diligence. *Id.*

Concerning HMR in particular, in August of 2016, Atwan and Pathhead recommended Plaintiffs enter into a "Participation Agreement" with HMR for the

purchase of oil-and-gas assets in Kentucky and West Virginia. *Id.* As part of this agreement, HMR "agreed to use reasonable efforts to acquire mineral rights on behalf of Plaintiffs." *Id.* 9-10. The Participation Agreement obligated HMR to provide Plaintiffs with certain information and a diligence report once "a potential acquisition was identified" and permitted HMR to reserve to itself 17.5% of the mineral interest as compensation for its services. *Id.* 10. However, Plaintiffs assert that HMR paid Atwan and Pathhead to recommend that Plaintiffs enter into the Participation Agreement and that HMR charged Plaintiffs additional costs related to the purchase of minerals to which HMR was not entitled. *Id.* 11.

As a result, Plaintiffs filed suit on September 26, 2019, in the 191st District Court of Dallas County, Texas, against HMR and Pathhead. *Id.* 12. HMR removed before Plaintiffs served Pathhead, and Plaintiffs voluntarily dismissed the case before HMR filed an answer. *Id.* Then on December 18, 2019, Plaintiffs filed this lawsuit in the 116th District Court of Dallas County, Texas, initially against only Atwan, Pathhead, Dome, and BBH. *Id.* While still in state court, Plaintiffs amended their Original Petition to add Defendants HMR and Morgan Stanley. *Id.* 13. Plaintiffs' suit brings claims for breach of contract, negligence, breach of fiduciary duty, tortious interference with a contract, fraud, fraud in a real-estate transaction, negligent misrepresentation, aiding and abetting/assisting and encouraging tortious acts, breach of the duty of good faith and fair dealing, negligent supervision, and violations of the Texas Securities Act. First Am. Pet., Def.'s App.

33-39 (ECF No. 1-3). HMR removed Plaintiffs' lawsuit from the 116th District Court on January 24, 2020. Notice (ECF No. 1).

Plaintiffs subsequently filed a Motion to Remand (ECF No. 10), asserting HMR improperly removed the case because the parties are not diverse—"Plaintiff[s] [are] citizen[s] of Texas," and "[t]here are numerous Texas Defendants." Mot. 6; *see also* Am. Compl. 2 (ECF No. 12). However, HMR contends the Court has diversity jurisdiction because Plaintiffs are citizens of Texas, and HMR is a citizen of Kentucky. Notice 3-4. HMR argues the Court must disregard the remaining Defendants' citizenship for its jurisdictional analysis because Plaintiffs improperly joined[1] their claims against Atwan, Pathhead, and Morgan Stanley "in connection with the HMR Participation Agreement" with those against HMR and fraudulently misjoined their claims against HMR with those against the other Defendants. Resp. 12, 20 (ECF No. 21). Plaintiffs' motion is fully briefed and ripe for determination. Resp.; Reply (ECF No. 31).

### Legal Standard

A defendant may remove a civil action from state court if it could have originally been filed in federal court, though the removing party bears the burden to show that federal jurisdiction exists. 28 U.S.C. § 1441(a); *see Allen v. R & H Oil*

---

[1] HMR refers to improper joinder as "fraudulent joinder"; however, because the Fifth Circuit "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,'" the Court uses the Fifth Circuit's "preferred" term "[a]lthough there is no substantive difference between the two." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc).

& Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995) (citing *Gaitor v. Peninsular &*
*Occidental S.S. Co.,* 287 F.2d 252, 253-54 (5th Cir. 1961)). But federal courts are
courts of limited jurisdiction. "They possess only that power authorized by
Constitution and statute, which is not to be expanded by judicial decree."
*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Scalia, J.)
(citations omitted). Generally, unless otherwise provided by statute, federal courts
only have jurisdiction over cases involving (1) a federal question arising under the
Constitution, a federal law, or a treaty, or where there exists (2) complete diversity
of citizenship between adverse parties, and the case satisfies the amount in
controversy. *See* 28 U.S.C. §§ 1331, 1332. In diversity cases, each plaintiff's
citizenship must be diverse from each defendant's citizenship, and the amount in
controversy must exceed $75,000. 28 U.S.C. § 1332(a).

 "'When removal is based on diversity of citizenship, diversity must exist at
the time of removal.'" *Richey v. Wal-Mart Stores, Inc.*, 390 F. App'x 375, 377 (5th
Cir. 2010) (per curiam) (quoting *Tex. Beef Grp. v. Winfrey,* 201 F.3d 680, 686 (5th
Cir. 2000) (per curiam)) (citing *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th
Cir. 2001) ("[The Defendant] must prove that federal jurisdiction existed at the
time of removal, or, at the very least, have alleged facts prior to the entry of
judgment in this case that establish federal subject-matter jurisdiction.")). "[A]
party's post-removal change in citizenship [cannot] oust the court of jurisdiction."
*Garcia v. Boyar & Miller, P.C.*, 2007 WL 1556961, at *2 (N.D. Tex. May 30, 2007)
(Fitzwater, J.) (citing *IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health,*

*Inc.*, 676 F.2d 152, 157 (5th Cir. Unit B 1982)). Moreover, any doubts concerning removal must be resolved against removal and in favor of remand. *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (citation omitted); *see also Baylor Univ. Med. Ctr. v. Ark. Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 508 (N.D. Tex. 2004) ("[T]he court hastens to note that 'any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court.'" (citation omitted)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a removed case], the case shall be remanded." 28 U.S.C. § 1447(c); *see also Exxon Mobil Corp. v. Starr Indem. & Liab. Ins. Co.*, 716 F. App'x 349, 350-51 (5th Cir. 2018) (per curiam).

## Analysis

HMR asserts this Court has diversity jurisdiction and should not consider Atwan, Pathhead, Morgan Stanley, Dome, and BBH's citizenship in determining whether jurisdiction exists because Plaintiffs (1) improperly joined Atwan, Pathhead, and Morgan Stanley and (2) fraudulently misjoined their claims against HMR with those against Dome, BBH, Atwan, Pathhead, and Morgan Stanley to defeat federal jurisdiction. Notice 3-5; Resp. 12, 20. The Court first addresses HMR's improper-joinder argument before turning to fraudulent misjoinder.

### I. Improper Joinder

HMR contends this Court should ignore Atwan, Pathhead, and Morgan Stanley's Texas citizenship for its jurisdictional analysis because Plaintiffs

improperly joined them, as demonstrated by Plaintiffs' inability to state a claim against them. Resp. 20-22. Plaintiffs argue they adequately pleaded several causes of action against these Defendants in their First Amended Petition. Mot. 17. The Court finds Plaintiffs state a breach-of-contract claim against Atwan.

Diversity jurisdiction requires complete diversity among defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83-84 (2005) (citing 28 U.S.C. §§ 1332, 1441(b)) ("When federal-court jurisdiction is predicated on the parties' diversity of citizenship . . . removal is permissible 'only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action [was] brought.'"). "The improper joinder doctrine," however, "constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). "To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (citing *Smallwood*, 385 F.3d at 573).

HMR does not contend Plaintiffs have fraudulently pleaded jurisdictional facts. Therefore, the Court only looks to the second test: "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant," meaning "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citations omitted) ("To reduce possible confusion, we

adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not."); *accord Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 205 (5th Cir. 2016). To determine whether the defendant has demonstrated a plaintiff's inability to recover against the nondiverse defendant, courts conduct "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the [state-court petition at the time of removal] to determine whether, under state law, the [petition] states a claim against the in-state defendant." *Larroquette v. Cardinal Health, 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006) (citing *Smallwood*, 385 F.3d at 573); *see also Alviar v. Lillard*, 854 F.3d 286, 290 n.1 (5th Cir. 2017) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal.")).

"Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. However, where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . , the district court may . . . pierce the pleadings and conduct a summary inquiry." *Superior Air Parts, Inc. v. Kubler*, 2015 WL 567223, at *6 (N.D. Tex. Feb. 11, 2015) (quoting *Smallwood,* 385 F.3d at 573). But a "summary inquiry is 'appropriate only to identify the presence of discrete and undisputed facts that would preclude [a] plaintiff's recovery against the [non-diverse] defendant,' and should not proceed into a resolution of the merits." *Id.*

(quoting *Smallwood,* 385 F.3d at 573-74). Indeed, the Fifth Circuit has cautioned "against becoming entangled in the merits at the jurisdictional stage, . . . noting that an 'inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.'" *African Methodist Episcopal Church*, 756 F.3d at 796 (quoting *Smallwood,* 385 F.3d at 573-74). Thus, because a court's "Rule 12(b)(6)-type analysis . . . is used to resolve the issue of jurisdiction, not merits," where a court finds a party is improperly joined, dismissal without prejudice is appropriate. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 210.

In conducting its Rule 12(b)(6)-type improper-joinder analysis, the Court "view[s] all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff[s,] and resolve[s] any contested issues of fact and any ambiguities of state law in the plaintiff[s'] favor." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (internal quotation marks and brackets omitted) (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). "Ultimately, '[t]he burden is on the removing party; and the burden of demonstrating improper joinder is a heavy one.'" *African Methodist Episcopal Church*, 756 F.3d at 793 (quoting *Cuevas*, 648 F.3d at 249).

Because "the so-called Rule 12(b)(6)-type analysis . . . is shorthand for the federal pleading standard itself," courts must "apply the federal pleading standard" in conducting this analysis. *Int'l Energy Ventures Mgmt.,* 818 F.3d at 203-04. Therefore, under the federal pleading standard, when deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded

facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that Plaintiffs are plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

Here, Plaintiffs assert a breach-of-contract claim against Atwan, a nondiverse defendant. First Am. Pet., Def.'s App. 33 (ECF No. 1-3). Under Texas

law, "[t]he four elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *EJ Madison, LLC v. Pro-Tech Diesel, Inc.*, 594 S.W.3d 632, 639-40 (Tex. App.—El Paso 2019, no pet.) (citing *Sanders Oil & Gas GP, LLC v. Ridgeway Elec.*, 479 S.W.3d 293, 299-300 (Tex. App.—El Paso 2015, no pet.). Plaintiffs allege they have a "valid, enforceable contract . . . with Atwan," the Broker and Due Diligence Agreement. First Am. Pet., Def.'s App. 33 (ECF No. 1-3). This agreement purportedly made Atwan "responsible for: (1) deal sourcing, deal valuation, due diligence (including technical, commercial, and management due diligence), deal coordination, deal staffing and 'working with Source Rock's [or Morgan Stanley's] proprietary network of industry experts to evaluate and execute deals.'" *Id*. 24-25. Plaintiffs allege they have performed under the contract and "paid Atwan all monies due." *Id*. 33. "In total, Atwan has been paid millions of dollars by Collingwood for services rendered in conjunction with the Broker and Due Diligence Agreement." *Id*. 25. Atwan, however, allegedly breached the contract by not performing the required due diligence because "[o]ver the course of the past four years," Plaintiffs "closed on over $250 million in assets based upon the recommendation and advice of Atwan or a combination of Atwan and Pathhead," and "[e]ach of [those] investments [has] proven to be investments that Collingwood should not have invested in . . . for the value paid, if there had been true due diligence performed by Atwan and Pathhead." *Id*. 25. Plaintiffs contend

that in addition to receiving fees from them as buyers in these transactions, Atwan and Pathhead received fees from the sellers, which is what motivated Atwan and Pathhead to recommend deals with these sellers to Plaintiffs. *Id.* 26. Plaintiffs assert they suffered damages as a result of Atwan's breach because they "learned that the value paid on these transactions far exceeded the fair market value of these assets at the time of the transaction." *Id.* "Had Atwan and/or Pathhead performed industry standard due diligence as well as the contractual due diligence that Atwan agreed to perform, Atwan and Pathhead could not have, in good faith, recommended to proceed with the transactions on the terms paid by Collingwood." *Id.* 26-27. Accepting all facts as true and viewing them in the light most favorable to Plaintiffs, the Court finds Plaintiffs have plausibly stated a breach-of-contract claim under Texas law and need not evaluate Plaintiffs' additional claims.

HMR contends Plaintiffs' breach-of-contract claim against Atwan fails because Plaintiffs' First Amended Petition does not explain how the Broker and Due Diligence Agreement, which is alleged to be between Razon and Source Rock Energy, LLC, can bind Atwan or benefit Plaintiffs. Resp. 29. HMR further contends "there are not sufficient factual allegations with regard to the HMR transaction to give rise to an inference that a breach of any contract occurred." *Id.* But, when considering a motion to remand and conducting a Rule 12(b)(6)-type improper-joinder analysis, the Court must resolve contested issues of fact in Plaintiffs' favor and accept all well-pleaded facts as true, viewing them in the light most favorable to Plaintiffs. *Davidson*, 819 F.3d at 765; *In re Katrina Canal Breaches Litig.,* 495

F.3d at 205.

Here, Plaintiffs first allege Razon, an owner or interest-holder in Collingwood Brookshire USA, Inc. and Collingwood USA, Inc., "sign[ed] an 'Agreement between Source Rock Energy, LLC and Mr. Enrique K. Razon, Jr.,'" the Broker and Due Diligence Agreement, which obligated Atwan to perform certain duties. First Am. Pet., Def.'s App. 24 (ECF No. 1-3). And later, Plaintiffs allege "Collingwood has a valid, enforceable contract (Broker and Due Diligence Agreement for which Collingwood is an intended beneficiary) with Atwan." *Id.* 33. To the extent Razon did not sign the contract on Plaintiffs' behalf, Plaintiffs' allegations raise the inference that the contracting parties intended Plaintiffs to benefit from the contract. *See id.* Because "Texas law recognizes that third parties have standing to recover under a contract that is clearly intended for their direct benefit," the Court finds no infirmity in Plaintiffs' allegations for any failure to plead that Plaintiffs were parties to, or third-party beneficiaries of, the Broker and Due Diligence Agreement. *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam)). Additionally, because Plaintiffs allege "Collingwood has a valid, enforceable contract . . . *with Atwan*," the Court must resolve this factual ambiguity in Plaintiffs' favor, accept Plaintiffs' allegations as true, and therefore find that Plaintiffs pleaded Atwan is a party to the Broker and Due Diligence Agreement.

Last, HMR objects that "there are not sufficient factual allegations with regard to the HMR transaction to give rise to an inference that a breach of any

14

contract occurred." Resp. 29. But the test for improper joinder asks, "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant," based on a Rule 12(b)(6)-type analysis of the state-court petition at the time of removal. *Smallwood*, 385 F.3d at 573; *accord Larroquette*, 466 F.3d at 376. The Court has already determined that Plaintiffs have stated a breach-of-contract claim against in-state Defendant Atwan—the improper-joinder analysis need not focus on allegations specific to the HMR transaction to find a possibility of recovery against an in-state defendant. Thus, Plaintiffs have not improperly joined Atwan, and the Court should consider his Texas citizenship in evaluating whether complete diversity exists in this case. *See* Notice 4. Because Plaintiffs are also Texas citizens, there is no diversity, and the Court pretermits considering whether Plaintiffs have stated a claim against Pathhead and Morgan Stanley.[2] *See id.*; Mot. 13.

## II. Fraudulent Misjoinder

HMR also argues this Court should ignore Atwan, Pathhead, Morgan Stanley, Dome, and BBH's citizenship for its jurisdictional analysis because

---

[2] Plaintiffs aver that Atwan and Pathhead are citizens of Texas but fail to adequately allege Morgan Stanley & Co., LLC, Dome Holdings, LLC, and BBH Development, LLC's citizenship since they do not state the citizenship of each of Morgan Stanley, Dome, and BBH's members. Notice 4-5; Am. Compl. 2; *see Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (citations omitted) ("[L]ike limited partnerships and other unincorporated associations or entities, the citizenship of a[n] LLC is determined by the citizenship of all of its members."). Nonetheless, this failure is immaterial because Atwan's nondiverse citizenship alone destroys diversity jurisdiction.

Plaintiffs fraudulently misjoined their claims against HMR with their claims against all other Defendants to defeat federal jurisdiction. Resp. 12. Plaintiffs contend their claims are not misjoined because they "asserted causes of action related to a series of transactions that all occurred as a result of Atwan, Pathhead and Morgan Stanley's conduct," and share common questions and facts.  Mot. 25-26. The Court finds Plaintiffs' breach-of-contract claim against Atwan and tortious-interference claim against HMR are properly joined.

In the Fifth Circuit, a removing party may establish improper joinder by demonstrating either (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court. *Cuevas*, 648 F.3d at 249 (citing *Smallwood*, 385 F.3d at 573). Fraudulent misjoinder represents a third test established by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). "In *Tapscott,* the Eleventh Circuit stated that, in some circumstances, a plaintiff's failure to comply with joinder requirements is 'just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possible cause of action,' and justifies removal on diversity grounds." *Salazar v. Lopez*, 2013 WL 1124302, at *1 (N.D. Tex. Mar. 18, 2013) (Lynn, J.) (quoting *Tapscott*, 77 F.3d at 1360). However, "'mere misjoinder' . . . does not constitute *fraudulent* misjoinder under *Tapscott*." *Id.* (emphasis in original) (brackets omitted) (quoting *Tapscott*, 77 F.3d at 1360). "[O]nly the most 'egregious' instances of misjoinder rise to the

level of fraudulent misjoinder"—these are instances involving wholly distinct claims so devoid of real connection with the controversy that their joinder borders on a sham. *Garcia v. Tchetgen*, 2019 WL 7879731, at *2 (N.D. Tex. July 22, 2019) (quoting *Tapscott*, 77 F.3d at 1360). Though the Fifth Circuit has never expressly adopted *Tapscott*'s fraudulent-misjoinder doctrine, it has cited *Tapscott* with approval, suggesting it would adopt the doctrine under appropriate circumstances. *See Crockett v. R. J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 n.5 (5th Cir. 2006); *In re Benjamin Moore & Co.*, 309 F.3d 296, 296 (5th Cir. 2002)); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002); *accord Crow v. Melton*, 2018 WL 10419358, at *4 (N.D. Tex. Feb. 20, 2018), *adopted by* 2018 WL 10419359 (N.D. Tex. Mar. 23, 2018); *Henley v. Meyer*, 2015 WL 224369, at *4 (N.D. Tex. Jan. 16, 2015); *Salazar*, 2013 WL 1124302, at *1. Accordingly, most courts in this district have assumed without deciding that "fraudulent misjoinder is a . . . possible ground to support a finding of improper joinder." *Salazar*, 2013 WL 1124302, at *1 (Lynn, J.) (internal quotation marks omitted) (citations omitted); *see also Crow*, 2018 WL 10419358, at *4 (Horan, J.) (citations omitted); *Henley*, 2015 WL 224369, at *4 (Lindsay, J.) (citations omitted); *Tex. Instruments Inc. v. Citigroup Glob. Mkts., Inc.,* 266 F.R.D. 143, 147 (N.D. Tex. 2010) (Fish, J.); *Superior Air Parts*, 2015 WL 567223, at *3 n.2 (Fitzwater, J.) (citations omitted); *but see Garcia*, 2019 WL 7879731, at *2 (Lindsay, J.) (citations omitted) ("In the absence of clear direction from the Fifth Circuit or the United States Supreme Court, the court declines to adopt *Tapscott*'s fraudulent misjoinder doctrine to expand its

jurisdiction under the removal statute. . . . Moreover, regardless of whether joinder . . . was proper, the court does not believe application of the fraudulent misjoinder doctrine is appropriate in this case . . . ."). Accordingly, the Court assumes without deciding that fraudulent misjoinder is a third means of establishing improper joinder.

Unlike improper joinder, the fraudulent-misjoinder analysis does not involve a Rule 12(b)(6)-type analysis; it instead asks two conjunctive questions: "(1) has one party been misjoined with another party in violation of the applicable . . . joinder rules; and (2) is any misjoinder sufficiently 'egregious' to rise to the level of a fraudulent misjoinder?" *Superior Air Parts*, 2015 WL 567223, at *4 (quoting *Martinson v. Total Petrochems. & Refin. USA, Inc.,* 2014 WL 2169970, at *2 (S.D. Tex. May 23, 2014)); *see also Crow*, 2018 WL 10419358, at *5 (citations omitted). Because the Fifth Circuit has not expressly adopted fraudulent misjoinder, it has not stated whether federal or state joinder rules govern the analysis. *Henley*, 2015 WL 224369, at *4. "Nevertheless, district courts in Texas have applied the Texas rules, 'in large part because the applicable Texas joinder rule is practically identical to Federal Rule 20(a) and because the claimant was required to follow the state's joinder rules when it initially brought suit.'" *Superior Air Parts*, 2015 WL 567223, at *4 n.3 (citations omitted); *see also Doe #4 v. Salesforce.com, Inc.*, 389 F. Supp. 3d 473, 476 n. 22 (S.D. Tex. 2019) (citations omitted); *SCD Mem'l Place II, LLC v. Landmark Am. Ins. Co.*, 2019 WL 7900459, at *2 (S.D. Tex. Dec. 19, 2019) *adopted by* 2020 WL 641719 (S.D. Tex. Feb. 11,

2020) (citations omitted) ("Where a case has been removed from state court, it is the state's joinder rules that must be consulted.").

Texas Rule of Civil Procedure 40(a) permits claims against multiple defendants to be joined in one action if (1) a plaintiff has asserted against them "any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) at least one "question of law or fact" common to all of the defendants will arise in the action. *Salazar*, 2013 WL 1124302, at *2 (quoting Tex. R. Civ. P. 40(a)). The logical-relationship test, borrowed from federal law, governs Texas Rule 40's "same transaction" requirement. *Tex. Instruments*, 266 F.R.D. at 148 (footnote omitted) (citing *Blalock Prescription Ctr., Inc. v. Lopez-Guerra,* 986 S.W.2d 658, 663-64 (Tex. App.—Corpus Christi 1998, no pet.)). There need only be a single question of law or fact common among the parties to satisfy Texas Rule 40's "common question" requirement. *Id.* (citing *Jamison v. Purdue Pharma Co.,* 251 F. Supp. 2d 1315, 1323 (S.D. Miss. 2003)). And "Texas Rule 40 is interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action." *Superior Air Parts*, 2015 WL 567223, at *4 (citation and internal quotation marks omitted).

Here, Plaintiffs argue that all of their claims—those against HMR and the other Defendants—"relate[] to a series of transactions that all occurred as a result of Atwan, Pathhead and Morgan Stanley's conduct." Mot. 25. Plaintiffs contend Atwan or Pathhead brought each transaction to Plaintiffs; in exchange, Plaintiffs paid them "pursuant to the Broker and Due Diligence Agreement"; and the "other

19

parties to those transactions (HMR, Dome, and BBH) secretly paid Atwan and/or Pathhead to encourage [Atwan/Pathhead] to provide the ultimate recommendation to [Plaintiffs] to proceed with the transactions." *Id.* 26. HMR responds that Plaintiffs' claims against HMR and Plaintiffs' claims against the other Defendants, "involving different properties, different time periods, different agreements, and different representations, do not arise out of the same transaction or series of transactions simply because each plaintiff is alleged to have been defrauded in a similar scheme" or because the Defendants "independently committed similar torts." Resp. 15-16. HMR also argues there is no "common question[] of law or fact" between Plaintiffs' claims against HMR and their claims against the other Defendants because "there is . . . not a sufficient logical relationship between the HMR transaction and those involving the other defendants to conclude that the evidence presented will be material, relevant and admissible in each case." *Id.* 18 (internal quotation marks omitted).

Plaintiffs assert breach-of-contract claims against Atwan and HMR, alleging Atwan breached the Broker and Due Diligence Agreement and HMR the Participation Agreement. First Am. Pet., Def.'s App. 33-34 (ECF No. 1-3).[3]

---

[3] Though the Fifth Circuit has not expressly adopted fraudulent misjoinder and, therefore, has not stated whether courts are to evaluate a plaintiff's pleadings at the time of removal or subsequent amendments when conducting the fraudulent-misjoinder analysis, the Court examines Plaintiffs' live pleading at the time of removal like the Fifth Circuit mandates in other removal contexts. *Alviar*, 854 F.3d at 290 n.1 (citing *Manguno*, 276 F.3d at 723 ("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal.")).

Specifically, Plaintiffs contend Atwan, aided by Pathhead, breached the Broker and Due Diligence Agreement by failing to perform due diligence for several deals he recommended. *Id.* 25-27. Atwan allegedly failed to perform this due diligence because Dome, BBH, and HMR tortiously interfered when they paid him to recommend Plaintiffs close on deals with them. First Am. Pet., Def.'s App. 26-28, 31, 34 (ECF No. 1-3). "[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when there is a likelihood of overlapping proof and duplication in testimony." *Tex. Instruments*, 266 F.R.D. at 152 (internal quotation marks omitted) (quoting *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 650 (S.D. Tex. 2005)) (citing *Lott v. Eastman Kodak Co.*, 1999 WL 242688, at *3 (N.D. Tex. Apr. 16, 1999)). Here, to prove their breach-of-contract claim against Atwan and tortious-interference claim against HMR, Plaintiffs must establish that: a contract—the Broker and Due Diligence Agreement—existed; Atwan failed to or deficiently performed under the contract; and Plaintiffs suffered damages as a result. *See Settlement Funding LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590, 606 (S.D. Tex. 2014) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)) ("A claim for tortious interference with a contract may be established by proof that (1) a contract existed; (2) the defendant 'willfully and intentionally interfered with that contract;' (3) the interference proximately caused damage; and (4) the plaintiff suffered actual damages."), *amended by* 2014 WL 1493857 (S.D. Tex. Apr. 15, 2014); *EJ Madison, LLC*, 594 S.W.3d at 639-40 ("The four elements of a breach of contract claim are: (1) the existence of a valid contract; (2)

performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."). Accordingly, the Court finds these claims are logically related such that they arise out of the same occurrence and share at least one common question or law or fact. Therefore, considered in light of Texas's policy encouraging broad joinder of multiple parties in the same action, the Court finds these claims are properly joined under Texas Rule 40.

However, even if Plaintiffs' breach-of-contract claim against Atwan and tortious-inference claim against HMR were misjoined, mere misjoinder does not constitute fraudulent misjoinder under *Tapscott*. *Salazar*, 2013 WL 1124302, at *1 (citation omitted). To be fraudulently misjoined, the misjoinder must demonstrate a level of egregiousness involving wholly distinct claims so devoid of real connection with the controversy that their joinder borders on a sham. *Garcia*, 2019 WL 7879731, at *2 (citation omitted).  The Court does not find Plaintiffs' breach-of-contract claim against Atwan and tortious-interference claim against HMR are so devoid of connection with the controversy that joining them borders on a sham. Thus, even if those claims were misjoined, they have not been fraudulently misjoined and do not justify disregarding Atwan's citizenship under the doctrine of fraudulent misjoinder.

While Plaintiffs assert several other claims against HMR, because the Court has already determined that Plaintiffs have properly joined at least one claim against HMR with one claim against Atwan, HMR and Atwan are both proper parties to the lawsuit, and the Court need not analyze Plaintiffs' additional claims.

Plaintiffs and Atwan are citizens of Texas. Therefore, there is not complete diversity, and the Court does not have subject-matter jurisdiction. Because the Court lacks jurisdiction, the District Court should GRANT Plaintiffs' motion to remand and remand this case to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### III. Attorney's Fees and Miscellaneous

In their motion, Plaintiffs request the Court "award [them] their attorney's fees, costs and expenses incurred as a result of HMR's improper removal." Mot. 30. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). But "[t]here is no automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.,* 546 U.S. 132, 141 (2005) (Roberts, C.J.) (citations omitted). The relevant inquiry, therefore, is "'whether the defendant had objectively reasonable grounds to believe the removal was legally proper' at the time of removal, 'irrespective of the fact that it might ultimately be determined that removal was improper.'" *Woolslayer v. Lee C. Moore, Inc.*, 2019 WL 7283791, at *6 (N.D. Tex. Dec. 27, 2019) (quoting *Valdes*, 199 F.3d at 293). Though the Court

determined that removal is improper, it finds HMR had objectively reasonable grounds to believe it proper. This case involves many different claims and parties, and HMR's arguments that Plaintiffs improperly joined the nondiverse Defendants or fraudulently misjoined claims against HMR with those against the other Defendants are objectively reasonable. Accordingly, the District Court should DENY Plaintiffs' request for attorney's fees, costs, and expenses.

Further, because the Court lacks jurisdiction, it should decline to consider HMR's partial motion to dismiss (ECF No. 24) and Plaintiffs' motion to temporarily proceed without local counsel (ECF No. 28).

## **RECOMMENDATION**

For the reasons stated, the District Court should GRANT Plaintiffs' motion to remand (ECF No. 10) and REMAND this case to the 116th District Court of Dallas County, Texas. Additionally, the District Court should DENY Plaintiffs' request for attorney's fees, costs, and expenses and, because it lacks jurisdiction, decline to consider HMR's partial motion to dismiss (ECF No. 24) and Plaintiffs' motion to temporarily proceed without local counsel (ECF No. 28).

**SO RECOMMENDED.**

August 28, 2020.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).